NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ISABELLA TANIKUMI,** | Civ. No. 14-5877 |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **THE WALT DISNEY COMPANY,** *et al.* | |
| **Defendants.** | |

## WILLIAM J. MARTINI, U.S.D.J.

This is a copyright infringement case.  The Court has jurisdiction pursuant to 28 U.S.C. § 1338, which gives the district court original jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights."  *Id.*; *Levey v. Brownstone Inv. Grp., LLC*, No. CIV.A. 11-395 ES, 2012 WL 295718, at *1 (D.N.J. Feb. 1, 2012).

*Pro se* Plaintiff Isabella Tanikumi filed the Complaint alleging that that she is the author of a self-published memoir, *Yearnings of the Heart*, and that Defendants (or "Disney") infringed her work in creating the animated motion picture *Frozen*.  Disney filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff did not oppose.  For the reasons set forth below, the motion is **GRANTED**.

## I.    BACKGROUND

*Yearnings of the Heart* was originally copyrighted in 2010.  A second print was released in 2013, the same year that Disney released *Frozen*.

1

*Frozen*'s credits state that it was inspired by Hans Christian Andersen's story, "The Snow Queen." *Frozen* tells the story of two sisters, Elsa and Anna, who are princesses of a make-believe Nordic kingdom called Arendelle. Arendelle is surrounded by mountains and fjords. Elsa, the older sister, has magical abilities to create ice and snow. As the children frolic in an indoor snowstorm of Elsa's creation, she accidentally zaps Anna in the head with a surge of cryokinetic energy, causing an injury. Trolls are able to heal Anna. Nevertheless, the family decides to isolate Elsa from the world and her sister until she learns to control her powers. Later, Elsa and Anna's parents die in a shipwreck.

When Elsa comes of age, she becomes the queen. Emissaries from far wide come to her coronation. One of those emissaries is Prince Hans of the Southern Isles, with whom Anna falls immediately in love. At the coronation ball, Anna asks Elsa for permission to marry Hans. Elsa refuses. The sisters have a fight, and in the course of doing so, Elsa accidentally exposes her powers to a crowd of horrified onlookers. Embarrassed and accused of being a witch, Elsa flees to the mountains to live alone in an ice castle. Inadvertently, she creates a permanent winter in the kingdom during her flight.

Anna follows Elsa to the mountains. Anna asks Elsa to return to Arendelle and end the winter. Elsa states that she does not know how to undo the spell and will remain a recluse for Anna's own safety. The sisters have a dispute, and Elsa again accidentally hits Anna with a surge of magical energy, this time in the chest. Anna's hair turns white. The trolls advise that there is frost in her heart and that she will eventually freeze to death. Only an act of true love can save her.

Eventually Anna and Elsa return to Arendelle, where it is expected that Hans's kiss will save Anna from death. But Hans refuses to kiss Anna, revealing that the marriage was just part of a scheme to take Arendelle's throne; he planned to marry Anna, stage an accident for Elsa, and then assume the throne. Hans leaves Anna for dead and goes to kill Elsa, but Anna intervenes and saves Elsa's life. This is the act of true love that saves Anna from freezing to death. The winter spell breaks, and the sisters reconcile.

On July 22, 2014, Plaintiff sent a letter to Defendants stating, "Your movie is a plagiarism of my book[]." (Declaration of Erin E. Turner ("Turner Decl."), Exhibit A). The "plagiarism summary" in her letter complains of 18 alleged thematic similarities. None of these involve magic powers or icy Nordic kingdoms.

*Yearnings of the Heart* follows the trajectory of the author's life and how she emotionally overcame external tragedies and inner insecurities.  The book begins with the author growing up in Huaraz, a city in the mountains of Peru.  Her family survives a devastating earthquake.  She suffers a kitchen accident that scars her face and leaves her with emotional insecurities.  She endures romantic jiltings several times as a teenager.  She moves to Lima to study nursing and lives with her sister Laura, with whom she shares an intense sisterly bond.  She dates a man she ultimately rejects because of his alcoholism.  Tragically, Laura dies when she is hit by a drunk driver.

The author moves to the United States where she becomes a physical therapist.  She finds a dermatologist who is able to take the scars off her face.  She falls in love with a man named Eduardo who shows interest in her, but she feels shy and makes up a false reason why she cannot be with him.

Eventually she meets a television producer, gets married, and has a family.  At the end of the book, she reconnects with Eduardo on Facebook.  They have an awkward meeting after which Eduardo unfriends her on Facebook.  The book ends with the author pondering the meaning of her connection with Eduardo.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  However, "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  Here, Defendants have submitted undisputedly authentic copies of *Yearnings of the Heart* in paperback and *Frozen* on DVD.  The Court will review both.

In a case where the issue is whether one work is so similar to another as to constitute copyright infringement, and both works can be considered at the pleading stage, no factual discovery is typically required, and the case is ripe for judgment on a Rule 12(b)(6) motion.  *See Winstead v. Jackson*, 509 F. App'x 139, 143 (3d Cir.) *cert. denied,* 134 S. Ct. 795 (2013) (*citing Peter F. Gaito Architecture, LLC v. Simone Development Corp.,* 602 F.3d 57, 64 (2d Cir. 2010)).

On a motion to dismiss, the moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Moreover, where the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## III.    DISCUSSION

The Plaintiff's Complaint will be dismissed because the similarities she alleges between her memoir and *Frozen* are not substantial. The two stories are entirely different.

To state an actionable claim for copyright infringement, Plaintiff must plead facts making it plausible "[1] that the defendant[s] had access to the copyrighted work and [2] that the original and allegedly infringing works share substantial similarities." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207-08 (3d Cir. 2005). "Substantial similarity," turns on two considerations: "(1) whether the

4

defendant copied from the plaintiff's work and (2) whether the copying, if proven, went so far as to constitute an improper appropriation." *Id.* at 208. The test of what constitutes an "improper appropriation" is "the response of the ordinary lay person" to the two works. *Id.*

Plaintiff only alleges that Disney plagiarized broad thematic elements of her memoir. Most of the 18 similarities in her letter to Disney are tenuous at best. The closest similarities are the generic themes of intense sisterly love and the concealment of a personal characteristic of which the protagonist is ashamed. There are also some minor thematic similarities involving the moon's connection to romance, mountainous settings, and betrayal by a lover.

Copyright law protects expression, not ideas. *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208 (3d Cir. 2005). ("It is a fundamental premise of copyright law that an author can protect only the expression of an idea, but not the idea itself."). "[G]eneral plot ideas and themes lie in the public domain and are not protected by copyright law." *Winstead v. Jackson*, No. CIV.A.10-5783 SRC, 2011 WL 4407450, at *2 (D.N.J. Sept. 20, 2011) *aff'd,* 509 F. App'x 139 (3d Cir. 2013).

The themes that both appear in *Frozen* and *Yearnings of the Heart* are expressed in vastly different ways. The setting, plot, and characters have no close similarities. No lay person could find that Disney improperly appropriated from *Yearnings of the Heart* because copyright law does not protect the generic, thematic elements of Tanikumi's work.

## IV.  CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is **GRANTED**. An appropriate order follows.

/s/ William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 19, 2015**

5